**Robert E. HULL, Plaintiff-Appellee,**

**v.**

**NORCOM, INC., a Delaware Corporation, and Norman J. Kauffmann, an individual, Defendants-Appellants.**

No. 84–8104.

United States Court of Appeals, Eleventh Circuit.

Jan. 24, 1985.

Rehearing and Rehearing En Banc Denied March 4, 1985.

---

Steven M. Collins, Atlanta, Ga., Carl F. Goodman, Surrey & Morse, New York City, for defendants-appellants.

R. Hal Meeks, Jr., C. Walker Ingraham, Thomas Richelo, Atlanta, Ga., Edward L. Hardin, Jr., Birmingham, Ala., for plaintiff-appellee.

Before HENDERSON and HATCHETT, Circuit Judges, and NICHOLS,* Senior Circuit Judge.

HATCHETT, Circuit Judge:

In this diversity action, we review the appropriateness of the district court's permanent injunction prohibiting the enforcement of an arbitration clause in an employment contract. We affirm.

On May 26, 1980, Robert E. Hull (Hull), the appellee, entered into an employment contract with Norcom, Inc. (Norcom), the appellant, a Delaware corporation. On January 5, 1983, following Hull's termination of employment, he filed a complaint in the district court seeking damages and a declaration that the contract was invalid because of Norcom's alleged fraud in the inducement to enter into the contract. Subsequently, Norcom filed a motion to compel arbitration in accordance with an arbitration provision in the contract. The district court permanently enjoined Norcom from compelling resolution of Hull's grievances in arbitration proceedings. Norcom appeals from the district court's order.

The issue on appeal is whether the district court erred in finding the arbitration clause in the employment contract invalid for lack of consideration.

Because this contract evidences a transaction involving commerce, application of the Federal Arbitration Act, 9 U.S.C.A. §§ 1–14 (West 1970), is undisputed. Section 2 of the Act which pertains to the validity, irrevocability, and enforcement of agreements to arbitrate provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Title 9 U.S.C.A. § 2. Where the Federal Arbitration Act applies, the district court determines whether a valid agreement to arbitrate exists. *Prima Paint Corp. v. Flood & Conklin,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). Title 9 U.S.C.A. § 4 in pertinent part provides:

> The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agree-

---

* Honorable Philip Nichols, Jr., U.S. Circuit Judge for the Federal Circuit, sitting by designation.

ment. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

Since both parties relied on New York law to support their respective positions, the district court properly applied general contract principles of New York in deciding enforceability of the arbitration agreement.

█ Norcom argues that the arbitration clause in the contract sufficiently comports with the Federal Arbitration Act and establishes the procedure to be followed in resolving grievances between the parties. The arbitration clause, paragraph 10 in the contract, provides:

> 10. ARBITRATION: Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association by one Arbitrator, and judgment upon the award rendered by the Arbitrator may be entered in any Court having jurisdiction thereof. The language of the submissions and hearings shall be English and the hearings shall take place in New York City, applying the substantive law of the state of New York.

Hull argues that the arbitration provision is void and unenforceable as a matter of law because the parties lack a mutual obligation to arbitrate. Paragraph 7 of the contract provides:

> 7. REMEDIES FOR BREACH: In the event of a breach or threatened breach by Hull of the confidentiality or noncompetition provision of this Agreement, the Company shall be entitled to an injunction restraining Hull from disclosing any such information, in whole or in part, or from rendering any services to any person, firm, corporation, association, or other entity to whom such information, in whole or in part, has been disclosed or is threatened to be disclosed. It is also agreed and recognized that the services to be rendered under this Agreement by Hull are special, unique, and of an extraordinary character, and that in the event of the breach by Hull of the terms and conditions of this Agreement to be performed by him, or in the event Hull shall without the written consent of the Company leave its employment and perform services during the two (2) year period thereafter for any person, firm or corporation engaged in a competing line of business with the Company's activities with regard to K-Mart, Wal-Mart, Ben Franklin or Jack Eckerd, then the Company shall be entitled to institute and prosecute proceedings in any court of competent jurisdiction, either at law or in equity, to obtain damages for any breach of this Agreement, or to enforce the specific performance thereof by Hull, or to enjoin Hull from performing services for any such other person, firm, or corporation, during the period herein agreed. This provision shall survive any termination of Hull's employment under this Agreement.

Hull contends that the qualifying language of paragraph 7 rendered paragraph 10 ineffectual. While, on its face, paragraph 10 compels both parties to submit all disputes to arbitration, paragraph 7 makes Norcom's obligation illusory. Presumably, the consideration for Hull's promise to arbitrate is Norcom's promise to arbitrate; however, Norcom's reciprocal obligation is rendered meaningless by paragraph 7. According to New York law, an arbitration agreement will not be enforced unless it is "mutually binding," and an agreement is not mutually binding where one party reserves the option to raise and resolve any and all disputes that it may have against the other party in a court of law rather than through arbitration. *See Miner v. Walden*, 101 Misc.2d 814, 422 N.Y.S.2d 335 (1979). Hull asserts that because the arbitration clause is not mutually binding under general principles of New York contract law, the arbitration clause is void.

█ Norcom relies on *Riccardi v. Modern Silver Linen Supply Co.*, 36 N.Y.2d

945, 373 N.Y.S.2d 551, 335 N.E.2d 856 (1975), where the New York Court of Appeals held that an employer's option to enforce a noncompetition covenant through a judicial forum did not negate the parties' mutuality of obligation to arbitrate with respect to the remainder of the claims arising under the employment agreement. The court stated that the parties could carve out a limited exception to an arbitration agreement which otherwise bound both parties to submit all controversies to arbitration. Likewise, Norcom argues that paragraph 7 of the employment agreement merely carves out a confidentiality and noncompetition covenant from the parties' mutual agreement to arbitrate, and Norcom may exercise its option of court enforcement only regarding these provisions.

We disagree with Norcom's interpretation of paragraph 7. While paragraph 7 specifically refers to the confidentiality and noncompetition provisions of the employment agreement, it also grants Norcom a unilateral right to a judicial forum "in the event of the breach by Hull of the terms and conditions of this agreement," and authorizes Norcom "to obtain damages for any breach of this agreement, or to enforce the specific performance thereof by Hull." Unlike *Riccardi*, where the litigation and arbitration provisions in the contract cross-referenced each other, the provisions in this case stand separately, independent, and inconsistent. As a result, the mutual obligation to arbitrate is effectively abrogated.

■ Norcom also argues that New York law requires consideration, not mutuality of obligation. *Waldron v. Goddess*, 93 A.D.2d 706, 460 N.Y.S.2d 793 (1st Dept. 1983), *rev'd on other grounds*, 61 N.Y.2d 181, 473 N.Y.S.2d 136, 461 N.E.2d 273 (1984). Norcom contends that ample consideration to support Hull's agreement to arbitrate was contained in the employment contract. For example, paragraph 2 of the agreement provides that Hull shall be paid a $60,000 per year base salary plus an incentive based on sales. We find that the consideration underlying the agreement between the parties is insufficient to support the enforcement of an arbitration provision which is unilaterally binding. In its discussion, the *Riccardi v. Modern Silver Linen Co., Inc.*, 45 A.D.2d 191, 356 N.Y.S.2d 872 (1974), court stated:

> [T]he enforceability of agreements to arbitrate is governed by the rules applicable to contracts ... and as in any bilateral agreement, both parties must be bound or neither is bound.... But, that does not mean that the mutual promises must create in each of the parties identical rights and obligations or that the parties must be bound in the exact same manner.... It is only where the "want of mutuality would leave one party without a valid or available consideration for his promise," that the agreement is necessarily unenforceable.... Stated another way, "it is consideration that is necessary, not mutuality of obligation."

*Riccardi*, 45 A.D.2d 191, 356 N.Y.S.2d at 875–76 (citations omitted). We hold that the consideration exchanged for one party's promise to arbitrate must be the other party's promise to arbitrate at least some specified class of claims. Mere presence of an arbitration clause is insufficient to enforce the arbitration agreement.

■ Norcom contends that *Southland Corporation v. Keating*, —— U.S. ——, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), supports its position that enforcement of the arbitration clause is consistent with the federal policy favoring arbitration. In *Southland*, numerous 7-Eleven franchisees commenced court actions against the owner and franchisor of the convenience stores. Southland petitioned to compel arbitration of these claims because of an arbitration provision within each of the franchise agreements. The Supreme Court of California interpreted a provision of the Franchise Investment Law to require all disputes to be resolved in a judicial forum, thus negating the effect of the arbitration agreements. The United States Supreme Court held that the California statute which required the Franchise Investment Law claims to be litigated was preempted by the Federal Arbitration Act.

Norcom asserts that, like the California Franchise Investment Law in *Southland,* any New York State law, such as the rule of mutuality, applicable to arbitration agreements is inconsistent with the Federal Arbitration Act's national policy favoring arbitration. We disagree. *Southland* is inapplicable to this case. In *Southland,* the Court held that a California statute, which required judicial resolution in federal court, directly conflicted with section 2 of the Federal Arbitration Act and, thus, violated the supremacy clause. The issue of "the making of an arbitration agreement" was not involved in *Southland;* in fact, the Court recognized a limitation in section 2 of the Act on the enforceability of arbitration provisions. Arbitration clauses may be revoked upon "grounds as exist at law or in equity for the revocation of any contract." Title 9 U.S.C.A. § 2. Hence, applicability of the general provisions of state contract law to the determination of "the making of an arbitration agreement" does not contravene the Federal Arbitration Act or its underlying policy. Title 9 U.S.C.A. § 4. *Southland* dealt with the forum for enforcement of an arbitration agreement; we, here, deal with the law to be utilized in making the agreement.

We affirm the district court's decision rendering the arbitration clause in the employment contract invalid and unenforceable.

AFFIRMED.

NICHOLS, Senior Circuit Judge, Sitting by Designation, dissenting:

I dissent, with respect and deference. The case is close, but I think the policy of the law to favor arbitration should save the day for appellant. Clauses 7 and 10 are somewhat inconsistent, but rules of construction require us to give meaning and effect to both clauses if possible. *See,* e.g., *Brown v. Financial Services Corp.,* 489 F.2d 144 (5th Cir.1974); *Chase Manhattan Bank v. First Marion Bank,* 437 F.2d 1040 (5th Cir.1971); *Weiss v. Weiss,* 52 N.Y.2d 170, 418 N.E.2d 377, 436 N.Y.S.2d 862 (N.Y.1981); *Integrated Sales, Inc. v. Maxwell Corporation of America,* 94 A.D.2d 221, 463 N.Y.S.2d 809 (App.Div.1983). The

statutory policy requires that this be done in respect to an arbitration contract as readily as in any other kind. Yet the court construes one, clause 7, in such a manner as to make clause 10 null and void in all respects.

Clause 7 need not be so construed. In view of its opening words—

> In the event of a breach or threatened breach by Hull of the confidentiality or noncompetition provision of this Agreement * * *

everything else that follows can be construed as relating to not any alleged breach by Hull, but only a breach of provisions relating to confidentiality or noncompetition. This reading is consistent with the second sentence of clause 7, which the majority concludes must be construed to make Norcom's obligation to arbitrate illusory. The sentence starts that it is "recognized that the services to be rendered under this Agreement by Hull are *special, unique,* and of *extraordinary character * * *"* (emphasis supplied). The emphasized terms are terms of art used to denote that the employee is a "key man" and therefore that a restrictive employment contract is conscionable. *See,* e.g., *Purchasing Associates, Inc. v. Weitz,* 13 N.Y.2d 267, 274, 196 N.E.2d 245, 246 N.Y.S.2d 600, 605 (N.Y.1963). Given this fact, it is a reasonable interpretation that the rest of the sentence relates to the restrictive covenant of employment provision. Other kinds of breaches by Hull can readily be imagined, and clause 7 can be read as saying nothing as to them. Such a reading would save clause 10 from nullity under the view of New York law stated by the court.

I can accept that view as correct though I am not sure New York law does not favor arbitration and save an arbitration clause from nullity when the reasons for doing so are less clear than those stated. *Riccardi* is a succinct memorandum opinion and does not purport to disapprove or overrule other cases by the various New York courts. *Miner v. Walden,* 101 Misc.2d 814, 422 N.Y.S. 335 (N.Y.Sup.Ct.1979), is instructive by negative inference. An agreement to

arbitrate future malpractice claims against a doctor about to perform an operation, excludes from arbitration any claim by the doctor for his fee. This being the only kind of claim he would be likely to have after the operation, effectually arbitration is confined to one side. This would be *res ipsa loquitur* for invalidity and no other reason would be needed if New York law were as here supposed. Yet the court finds it necessary to support to conclusion by other grounds, nowhere stating the one given to be conclusive. It concludes invalidity from the fact it is a "contract of adhesion" and unconscionable in its terms. *See also Deutsch v. Long Island Carpet Cleaning Co.*, 5 Misc.2d 684, 158 N.Y.S.2d 876 (Sup. Ct.App. Term 1956) (the court holding that under the circumstances of one party unilaterally inserting a one-way arbitration clause on the back of a receipt, "it cannot be said to represent a conscious agreement to limit arbitration to the customer's claims only. It is therefore unenforceable for lack of mutuality of obligation."). I am not at all sure, therefore, that New York law would not accept as sufficient any arbitration agreement except the cases supposed in *Riccardi*, where arbitration was quite expressly available to but one side only. A further depletion of mutuality as a barrier to enforcing an arbitration clause is found in *Waldron v. Goddess*, 93 A.D.2d 706, 460 N.Y.S. 793 (App.Div.1983), *rev'd on other grounds*, 61 N.Y.2d 81, 461 N.E.2d 273, 473 N.Y.S.2d 136 (N.Y.1984), which cites *Riccardi* for the proposition that want of mutuality invalidates an arbitration clause only when "want of mutuality would leave a party without valid or available consideration to support his promise."

The New York Court of Appeals, the highest court of that state, has clearly stated that mutuality "is not always essential to a binding contract * * *." *Weiner v. McGraw-Hill, Inc.*, 57 N.Y.2d 458, 464, 443 N.E.2d 441, 457 N.Y.S.2d 193, 196 (N.Y. 1982). The fundamental requisite, states the court, is the presence of consideration "[f]or, while coextensive promises may constitute consideration for each other, 'mutuality', in the sense of requiring such reciprocity, is not necessary when a promisor receives other valid consideration * * *." *Id.* (Citations omitted.)

In our case, the majority holds that if consideration rather than mutuality is the focus for consideration, then the consideration for one party's promise to arbitrate must be another's promise to arbitrate at least some class of claims. While I believe Norcom is obligated to arbitrate under the contract, I do not see this as clearly necessary under New York law, which is, of course, the law that we construe here. I consider again the court of appeal's statement on the issue.

> Far from consideration needing to be coextensive or even proportionate, the value of measureability of the thing forborne or promised is not crucial so long as it is acceptable to the promisee * * *. [The court will] not ask whether the thing which forms the consideration does in fact benefit the promisee or a third party or is of any substantial value to anyone. (*Hamer v. Sidway*, 124 N.Y. 538, 545, 27 N.E. 256.)

*Weiner*, 57 N.Y.2d at 464–65, 443 N.E.2d at 445, 457 N.Y.S.2d at 197.

Given the court of appeal's interpretation of New York contract law, I cannot agree with the majority that the consideration here was necessarily insufficient.